[No. 5999. Decided January 19, 1906.]

EDWARD TRUDEAU, *Appellant,* v. AMERICAN MILL COMPANY, *Respondent.*[1]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—INJURY TO EMPLOYEE DUMPING LOAD OF WOOD—COMPLAINT—SUFFICIENCY. The complaint in an action for personal injuries sustained by a teamster in the defendant's employ is insufficient, in that it shows that the plaintiff was guilty of contributory negligence which proximately caused the injury, where it appears therefrom that in using a dumping device on a wagon, known by him to be out of repair, and from which it was difficult to remove the wrench used in dumping the load, the plaintiff unnecessarily assumed a position where he would be struck by the wrench in case he was unsuccessful in removing it.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered September 25, 1905, upon sustain-

[1]Reported in 83 Pac. 725.

30—41 WASH.

ing a demurrer to the complaint, dismissing an action for personal injuries. Affirmed.

*Govnor Teats,* for appellant.

*J. B. Bridges,* for respondent.

RUDKIN, J.—The complaint in this action alleges substantially the following facts: The plaintiff was in the employ of the defendant as a teamster, engaged in hauling and delivering wood from the defendant's mill, in the city of Aberdeen. The wagons used by the plaintiff in this work were furnished with a platform about even with the top of the wheels, on the top of which was a large, cumbersome box in which the wood was placed. This box was moved back and forth on the platform by means of an endless chain and shafting, for the purpose of unloading. The shafting extended to the side of the platform and box, about the center thereof, and the box was moved back and forth by the teamster by means of a large wrench placed on the shafting.

At the time the plaintiff entered the employ of the defendant, on the 18th day of December, 1904, the shafting on one of the wagons was bent so that it was difficult to remove the wrench from the shafting when the load began to dump. This wagon was only used a portion of the time. On or about the 10th day of January, 1905, the plaintiff complained to the superintendent of the mill of the defective condition of this shafting, but nothing appears to have been done in regard thereto. On or about January 18, the plaintiff complained to the blacksmith in the defendant's employ, but was by him informed that he had no authority to make repairs unless directed so to do by the millwright. The plaintiff thereupon sought the millwright, and they went together to the blacksmith. They found the latter busy, but the millwright and blacksmith promised to make the necessary repairs at the first opportunity.

Soon thereafter the mill closed down, and when the plaintiff returned to work on or about the 22d day of February,

he discovered that the shafting had not been repaired. He again sought out the blacksmith, and the latter again promised to make the repairs within a few days. The plaintiff continued at work and, on the 25th day of February, 1905, was delivering a load of wood, and

"When undertaking to dump the said load of wood, and when the said box had reached about the point of the equilibrium, and at the point of dumping, he undertook to remove the said wrench, as was necessary for him to do, from the said shafting, but due and owing to the said defective condition of the same, he was unable to do so, the box fell to the ground, the shafting suddenly and with great force was whirled around carrying with it the said wrench, which struck the plaintiff upon the left temple and side of the head," etc.

To this complaint a demurrer was sustained for want of sufficient facts. The plaintiff elected to stand on his complaint, and refused to plead further. A judgment of dismissal was thereupon entered, from which this appeal is taken.

The defect in the shafting in question was open and apparent, the appellant had full knowledge thereof, and of the dangers incident to its use, and had he received the injuries complained of at any time before the promise to repair was given, the defense of assumption of risk or contributory negligence would necessarily have barred a recovery. If we concede that the appellant did not assume the risk arising from the use of the defective appliance after complaint was made, by reason of the promise to repair, yet he was in duty bound to exercise reasonable care and caution, in view of the defective condition of the appliance which he was handling. His care must be commensurate with the danger. In other words, he must exercise due and reasonable care under the particular circumstances. *Crooker v. Pacific Lounge & Mattress Co.*, 34 Wash. 191, 75 Pac. 632; *Indianapolis etc. R. Co. v. Watson* 114 Ind. 20, 14 N. E. 721, 15 N. E. 824, 5 Am. St. 578.

It is true, as contended by the appellant, that the facts are admitted by the demurrer; but the court is not bound to

accept every inference the pleader may draw from these facts. For instance, it is apparent from the complaint that it was not necessary for the appellant to keep the wrench on the shafting until the load began to dump. The wrench might readily have been removed before the load reached the dumping point. The rest could have been accomplished in entire safety by a lift on the front, or by pulling down on the load from behind. Again, it is not apparent to the court why the appellant should assume a position where the wrench would strike him in the event that he continued the use of the wrench until the load commenced to dump. In view of all the circumstances, we are of opinion that the appellant was guilty of contributory negligence which was the direct and proximate cause of his injury.

The demurrer was properly sustained, and the judgment is affirmed.

MOUNT, C. J., ROOT, DUNBAR, CROW, FULLERTON, and HADLEY, JJ., concur.